# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br>vs.<br><br>CHRISTOPHER ISIAH MOSLEY,<br><br>　　　　Defendant. | No. CR14-3030-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS** |

_____

## TABLE OF CONTENTS

*I.   INTRODUCTION AND BACKGROUND ................................................ 2*
　　*A.　Procedural Background ........................................................ 2*
　　*B.　Factual Background ............................................................. 3*
*II.  LEGAL ANALYSIS ........................................................................ 9*
　　*A.　Standard Of Review ............................................................. 9*
　　*B.　Non-Objected To Portions Of Report And Recommendation ........ 14*
　　　　*1.　Duffel bag search ........................................................ 14*
　　　　*2.　Evidence obtained by subsequent search warrants ............ 16*
　　*C.　Objections To Report And Recommendation .......................... 17*
　　　　*1.　The prosecution's objection .......................................... 17*
　　　　*2.　Mosley's objections .................................................... 18*
*III. CONCLUSION ............................................................................ 19*

## I. INTRODUCTION AND BACKGROUND
### A. *Procedural Background*

On May 21, 2014, an Indictment was returned against defendant Christopher Isiah Mosley charging him with possessing with intent to distribute 280 grams or more of crack cocaine, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 851, possessing with intent to distribute less than 50 kilograms of marijuana, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 851, possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On July 21, 2014, Mosley filed a motion to suppress in which he seeks to suppress evidence seized in a warrantless search of a bag he dropped in his backyard as he fled from the police. He also seeks to suppress evidence subsequently seized pursuant to a warranted search of his residence.

The prosecution filed a timely resistance to Mosley's motion. Mosley's motion to suppress was referred to United States Magistrate Judge Leonard T. Strand, pursuant to 28 U.S.C. § 636(b). On September 3, 2014, Judge Strand conducted an evidentiary hearing and subsequently held oral arguments on September 15, 2014. On September 26, 2014, Judge Strand filed a Report and Recommendation in which he recommends that Mosley's motion to suppress be granted. In his Report and Recommendation, Judge Strand initially concluded the police's entry onto Mosley's property did not violate the Fourth Amendment because the entry was a reasonable response to exigent circumstances. Judge Strand next determined that the police were justified in conducting a *Terry* stop of Mosley. Judge Strand also concluded that the police had reasonable and articulable suspicion to temporarily seize duffel bag Mosley dropped when fleeing the police. Judge Strand went on to determine that Mosley did not abandon the duffel bag

by dropping it in his own yard and that the plain view/plain smell doctrine did not apply to the duffel bag. Judge Strand, alternatively, concluded that even if he assumed, *arguendo*, that the police testified truthfully about seeing and smelling the marijuana in the duffel bag, the plain view/plain smell doctrine did not authorize a warrantless search of the duffel bag. Thus, Judge Strand concluded that the search of the duffel bag was illegal and all evidence discovered as a result of that search must be suppressed. Judge Strand determined that evidence found during a subsequent search of Mosley's residence was derivative evidence acquired as a consequence of the illegal search of the duffel bag and inadmissible under the "fruit of the poisonous tree" doctrine.

Both the prosecution and defendant Mosley have filed objections to Judge Strand's Report and Recommendation. The prosecution filed a timely response to Mosley's objections. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Mosley's motion to suppress.

### B. *Factual Background*

In his Report and Recommendation, Judge Strand made the following factual findings:

> At approximately 10:43 p.m. on May 7, 2014, the Fort Dodge Police Department Communications Center received a 911 call from a female caller who described an incident of domestic abuse. She identified herself to the dispatcher, Robin Ulicki, as "Chiesa" but did not give a last name. She reported that her assailant, "Chris Towns," had put his hands around her neck and pushed her down, causing her to scrape her knee. She told Ulicki she was "ok" and did not need medical attention. When asked about her location, Chiesa was unable to give a street address. She told Ulicki she was outside a yellow house on 11th Avenue SW, near the cross street of "10th or something." She agreed to wait outside the

3

yellow house until police arrived and advised that her assailant was inside the house. She stated that she was not aware of any weapons that her assailant might possess.

FDPD Officer Leighton Walker was the first officer to arrive in the general location Chiesa described, followed closely by Officer Joe Roetman. Lieutenant Dennis Mernka arrived in the area a few minutes later. After a brief search of the area, Walker and Roetman were unable to locate Chiesa. Ulicki advised the officers that her attempt to re-contact Chiesa failed but that the phone number Chiesa used was in the FDPD's records Management System (RMS). The RMS indicated that the number had previously been associated with the address of 1100 10th Avenue SW, which is in the area Chiesa had described. A brown house owned by defendant Christopher Mosley is located at that address.

Based on this information, Walker parked in front of Mosley's house and approached the front door to investigate Chiesa's report. As Walker approached, he saw an African-American man slam the door closed. Walker knocked loudly on the screen porch door, identified himself as a police officer and yelled for the occupant to open the door and answer questions about the reported domestic abuse. When Roetman arrived, he joined Walker at the front door, began knocking and threatened to kick the door in if they were not allowed entry. As Roetman continued knocking and yelling at the front door, Walker walked through Mosley's yard to the back of the house. As Walker reached the back of the house, an African-American man, later identified as Mosley, ran from the back door with a black duffel bag in hand towards the tree line north of the property.

Walker chased Mosley, radioed to his fellow officers that Mosley was running and commanded him to stop. Mosley ignored the command and continued to run. When Mosley was close to a line of parked cars on his property, he threw

4

the black duffel bag between two of the cars and then changed directions, running away from the bag and around the side of the house toward the front yard. Walker saw Mosley drop the bag but continued the chase. Walker and Roetman stopped Mosley in the front yard. Mosley struggled with the two officers to the point that Mernka, who had just arrived at the scene, had to help secure him in handcuffs. Mosley was arrested for interference with official acts and was placed in the back of a squad car.

Once Mosley was secured, Walker told Roetman and Mernka about the duffel bag. Mernka instructed Walker to find the bag and secure it. Walker returned to the back of the house, went to the line of parked cars and located the bag. Walker testified that he could smell marijuana when he approached the bag but did not include this detail in his incident report. Walker also testified that the bag was approximately twenty percent unzipped and that he could see a plastic or glass container inside. He testified that based on his experience, he thought the container could be drug packaging and marijuana.

During this time, heavy rain began to fall. Mernka joined Walker in the back yard and testified that he, too, could smell marijuana emanating from the duffel bag. However, Mernka failed to note this fact in his incident report. Mernka testified that the bag was unzipped approximately 6 to 12 inches and that he was able to look into the bag by focusing a flashlight into the opening. He testified that he saw plastic-cellophane wrapping inside the bag which, based on his experience, he believed could be drug packaging. However, he could not actually see any drugs or contraband in the bag.

Mernka directed Walker to find a camera and document the situation. Walker went to his squad car, retrieved his camera and returned to the back of the house to take photos of the bag and scene. Walker testified that he was

able to take only one photograph of the bag before the camera flooded and shut down due to the heavy rain. Walker further testified that he uploaded that photograph to his computer upon returning to the station. For reasons that were not explained, the photograph was lost.

The duffel bag was taken to Walker's squad car, placed in the trunk, and delivered to Detective Ryan Gruenberg at the Fort Dodge Law Enforcement Center. Both Walker and Mernka testified neither of them touched the zipper on the bag or any of the contents. No warrant was issued prior to the seizure of the duffel bag.

Roetman testified that after Mosley was secured, he entered the house without a warrant to find out if Chiesa was inside. After Roetman determined she was not present, Mernka entered the home and told Roetman that the duffel bag contained a large quantity of narcotics. Roetman noted this comment in his incident report. While Chiesa was not found in the home, Roetman was able to make telephone contact with her about an hour later.

At the Law Enforcement Center, Detective Ryan Gruenberg photographed the bag and documented in his report that it was "fully zipped" when it arrived. However, at the hearing Gruenberg testified he was unsure of whether the bag was fully zipped or partially zipped when he first encountered it. One photograph of the bag that appears to have been taken before it was searched was received into evidence. Gov't Ex. 11. Based on the angle of that photograph, it is not clear whether the bag is fully or partially closed. In any event, Gruenberg then opened the bag and photographed it contents. Next, he removed all the containers in the bag, photographed each, opened them, and photographed their contents. All of the contents, including a brown paper bag, appear to have been dry at the time they were photographed. *See* Gov't Exs. 12 to 15.

6

During his search of the bag, Gruenberg discovered marijuana and crack cocaine. He also found a firearm, but no photograph of that firearm was entered into evidence. No warrant was obtained before Gruenberg opened and searched the bag.

On May 8, 2014, Special Agent Eric Young applied for a search warrant for Mosley's home at 1100 10th Avenue SW and his black LG cellphone. The search warrant application was based primarily on the evidence gathered from the search of the duffel bag. Indeed, during oral argument counsel for the Government acknowledged that the warrant to search Mosley's home was issued as a result of the items found in the bag. The search of Mosley's home resulted in the seizure of additional narcotics including marijuana, crack cocaine and unlabeled prescription pills. The officers executing the warrant also found financial documents for bank accounts at Wells Fargo Bank. Based on the evidence found in the duffel bag and the new evidence found in Mosley's home, Special Agent Young obtained a warrant concerning the bank accounts. That warrant was executed and funds totaling $7,213.72 were seized from Mosley's accounts.

Report and Recommendation at 4-8. Judge Strand also made the following findings of fact regarding the duffel bag:

There are numerous, significant inconsistencies in the Government's evidence:

a. Walker and Mernka testified to a strong smell of marijuana as they approached the duffel bag. However, on cross-examination both admitted to not including that rather important detail in their respective incident reports.

b. Walker and Mernka testified the bag was partially unzipped when they found it, to a large enough extent that they allegedly could see suspicious items by shining a flashlight into the opening. Both also specifically and emphatically testified that neither touched the bag's zipper.

Yet when the bag arrived at the Law Enforcement Center, Gruenberg noted in his report the bag was "fully zipped." At the hearing, Gruenberg sat at counsel table and heard the testimony of his fellow officers. He then testified that his report may have been wrong and that the bag may have been only partially zipped when it arrived.

      c. Despite testimony that the bag was partially open, and that rain was falling so heavily as to flood and disable a police department camera, photographs taken at the Law Enforcement Center depict the bag's contents as being dry. Gov't Exs. 12-15. The contents include a dry brown paper bag that, according to the testimony, enclosed the glass jar Walker allegedly could see by peering into the bag's opening. Gov't Exs. 12-13. The Government presented no testimony that the officers covered the bag, or shielded it with an umbrella, to keep its contents dry at the scene. Yet somehow a paper bag that was in plain view because of a partially-opened zipper stayed dry during a downpour.

      d. Roetman acknowledged that his incident report references a comment Mernka made at the scene that the bag contained a large amount of narcotics. Based on Walker's and Mernka's testimony, Mernka could not have known that. Walker and Mernka testified that the bag was not searched at the scene. Mernka testified that when he looked through the alleged opening, he could only see plastic or cellophane material that might have been drug packaging.

      e. Walker testified that he attempted to document the positioning of the bag, the partial opening of the zipper and its location, by taking photographs at the scene. However, his camera allegedly shut down due to heavy rain after only one photograph was taken. Moreover, this sole photograph, which could be critical, mysteriously disappeared. Walker testified that he uploaded it to his FDPD computer but has since been unable to locate it. No explanation was provided.

Based on these inconsistencies, and my observations of the witnesses, I do not find the testimony of the FDPD officers

8

> to be credible with regard to the duffel bag. Instead, I find that the bag was fully zipped when first discovered by Walker, and later observed by Mernka. Thus, I reject Walker's and Mernka's testimony that they were able to view any contents of the bag by simply peering through its alleged opening. I further find that the bag did not emit a strong smell of marijuana, as neither Walker nor Mernka included that critical fact in their respective reports.

Report and Recommendation at 23-24.

## II. LEGAL ANALYSIS

### A. Standard Of Review

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

9

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's required *de novo* review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger *de*

*novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly

erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it

feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[1]

---

[1]The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. See *United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

As noted above, both the prosecution and Mosley have filed objections to Judge Strand's Report and Recommendation. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Mosley's motion to suppress.

### B. Non-Objected To Portions Of Report And Recommendation

#### 1. Duffel bag search

Judge Strand concluded that, assuming the truth of the law enforcement officers' testimony, the warrantless *seizure* of the duffel bag was valid under the plain view doctrine but that the police subsequently violated the Fourth Amendment by *searching* the duffel bag without a search warrant. Neither Mosley nor the prosecution have objected to Judge Strand's conclusion that the police's warrantless *search* of the duffel bag could not be justified under the plain view doctrine. From my review of the record, I agree with Judge Strand's conclusion.

The plain view doctrine is a recognized exception to the warrant requirement. *See United States v. Beasley*, 688 F.3d 523, 530 (8th Cir. 2012); *United States v. Darr*, 661 F.3d 375, 379 (8th Cir. 2011). "'Under the plain-view exception, officers may seize an object without a warrant if they are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object.'" *Beasley*, 688 F.3d at 530 (quoting *United States v. Muhammad*, 604 F.3d 1022, 1027 (8th Cir. 2010)). However, "[e]ven when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package." *United States v. Jacobsen*, 466 U.S. 109, 114 (1984); *see Horton v. California*, 496 U.S. 128, 141 n. 11 (1990) (observing that the seizure of a container in plain view "does not compromise the interest in preserving

14

the privacy of its contents because it may only be opened pursuant to a search warrant or one of the well delineated exceptions to the warrant requirement."). As the Fourth Circuit Court of Appeals cogently explained, "The 'plain-view' doctrine provides an exception to the warrant requirement for the *seizure* of property, but it does not provide an exception for a search." *United States v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997) (emphasis in original); *accord United States v. Rumley*, 588 F.3d 202, 205 (4th Cir. 2009); *see United States v. Carmack*, 426 Fed. App'x 378, 381-82 (6th Cir. 2011) ("When an item is in plain view, 'neither its observation nor its seizure would involve any invasion of privacy,' and therefore the plain view exception to the warrant requirement implicates the protection from unreasonable seizures, rather than unreasonable searches.") (quoting *Horton*, 496 U.S. at 133–34 (citations omitted)); *United States v. Corral*, 970 F.2d 719, 725 (10th Cir. 1992) (observing that "[i]n cases involving closed containers, therefore, the plain view doctrine may support the warrantless seizure of a container believed to contain contraband but any subsequent search of the concealed contents of the container must be accompanied by a warrant or justified by one of the exceptions to the warrant requirement."); *United States v. Donnes*, 947 F.2d 1430, 1436-39 (10th Cir. 1991) (holding that although "[p]robable cause to believe that contraband is stored in a container will justify a warrantless seizure" of the object, a warrantless search of a closed, opaque camera case could not be justified as a plain view search). Thus, I concur with Judge Strand that even if the police lawfully seized the duffel bag, based on the plain view or plain smell doctrine, they could not search the bag without obtaining Mosley's consent or a search warrant. Accordingly, the warrantless search of Mosley's duffel bag was illegal and all evidence discovered as a result of that search is suppressed.

### *2.    Evidence obtained by subsequent search warrants*

Mosley and the prosecution do not object to Judge Strand's conclusion that, because the search of the duffel bag was unlawful, all additional evidence discovered during the warranted searches of Mosley's home and bank accounts must be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). I also agree with Judge Strand's conclusion on this issue.

The exclusionary rule prohibits the introduction of evidence seized or acquired during an unlawful search. *See Murray v. United States*, 487 U.S. 533, 536 (1988). "The purpose of the Fourth Amendment exclusionary rule is to deter unreasonable searches, no matter how probative their fruits." *Oregon v. Elstad*, 470 U.S. 298, 306 (1985); *accord Stone v. Powell*, 428 U.S. 465, 486–89 (1976) (holding deterrence of Fourth Amendment violations by law enforcement personnel is the prime purpose of the exclusionary rule); *United States v. Scroggins*, 361 F.3d 1075, 1083 (8th Cir. 2004) ("The exclusionary rule's purpose is deterrence."). In discussing "the fruit of the poisonous tree" doctrine and the purging of illegal taint, the Eighth Circuit Court of Appeals has observed that:

> In a "fruit of the poisonous tree" doctrine case, a constitutional violation has occurred, and the issue is whether law enforcement obtained evidence "by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed.2d 441 (1963).

*United States v. Alvarez–Manzo*, 570 F.3d 1070, 1077 (8th Cir. 2009). In determining whether evidence is tainted by a prior violation of constitutional rights, the court is required to ask "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488.

The affidavits submitted in support of the search warrants for Mosley's house and bank accounts included both tainted and untainted evidence. After excluding the tainted evidence, there is insufficient evidence to provide a neutral magistrate with probable cause to search either Mosley's house or his bank accounts. Thus, the exclusionary rule reaches all of the evidence obtained from Mosley's house and bank accounts and is suppressed.

### C. Objections To Report And Recommendation
#### 1. The prosecution's objection

The prosecution objects to Judge Strand's findings and conclusions regarding his alternative determination that the plain view/plain smell doctrine was inapplicable here because the police did not see or smell marijuana in the duffel bag. In reaching this conclusion, Judge Strand found that the duffel bag was fully zipped when first discovered by Officer Walker and that the bag did not emit a strong order of marijuana. The prosecution requests that I reopen the record and permit it to offer additional police reports and a photograph that the prosecution had previously thought was destroyed. The prosecution argues that I should consider these materials in conjunction with the suppression record in assessing whether Judge Strand's factual finding concerning the credibility of witnesses was in error.

Whether to reopen the record is within my discretion. *See* 28 U.S.C. § 636(b)(1) (stating that a district judge "may" receive further evidence when considering objections to a report and recommendation); *United States v. Gill*, 513 F.3d 836, 846 (8th Cir. 2008) (reviewing district court's denial of motion to reopen a suppression hearing for abuse of discretion). While I retain discretion to reopen the record, "'courts should be extremely reluctant to grant reopenings.'" *United States v. Kithcart*, 218 F.3d 213, 219–20 (3d Cir. 2000) (quoting *United States v. Blankenship*, 775 F.2d 735, 740 (6th Cir.

1985)). The prosecution has offered no explanation as to why these police reports were not offered at the time of the suppression hearing, or why it did not seek to expand the record in the two weeks between the evidentiary hearing and oral arguments. In addition, while the prosecution asserts that it recently found the photograph, it does not explain what steps were taken to locate it. *See United States v. Bejarano-Ramirez*, 35 Fed. App'x 740, 742 (10th Cir. 2002) (holding that district court did not abuse its discretion denying the prosecution's motion to reopen a suppression hearing where the prosecution knew what the limited issues were at issue in the suppression hearing and simply did not fully develop its evidence). Moreover, I see no need not reopen the evidentiary record to resolve facts that have no bearing on the legal issues before me. As explained above, I have already accepted Judge Strand's conclusion that, even if the warrantless seizure of the duffel bag was valid under the plain view doctrine, the subsequent search of the duffel bag without a search warrant violated the Fourth Amendment. Thus, the prosecution's request to reopen the record is denied.

The prosecution objects to Judge Strand's factual finding that the police officers were not credible in their testimony regarding the duffel bag. I have reviewed the entire record *de novo* and conclude that Judge Strand's factual finding that the police officers were not credible in their testimony regarding the duffel bag is correct. As Judge Strand detailed in his Report and Recommendation, the officers' testimony varied with one another and had significant inconsistencies which were fatal to their credibility on this issue. Accordingly, the prosecution's objection is overruled.

### 2. *Mosley's objections*

Mosley agrees with Judge Strand's factual findings and his conclusion that all evidence obtained as a result of the warrantless search of Mosley's duffel bag should be suppressed. However, in order to ensure that all issues raised in his motion to suppress are preserved for appellate review, if necessary, Mosley objects to all of Judge Strand's

legal conclusions that were adverse to him.  Specifically, he objects to Judge Strand's conclusions that:  (1) the police's entry onto Mosley's property did not violate the Fourth Amendment; (2) Mosley's seizure and arrest did not violate the Fourth Amendment; and (3) the seizure of Mosley's duffel bag did not violate the Fourth Amendment.  Having reviewed the entire record *de novo,* I find none of Judge Strand's legal conclusions on these issues to be erroneous or incorrect.  Accordingly, I overrule each of Mosley's objections to Judge Strand's Report and Recommendation.

## III.   CONCLUSION

Therefore, for the reasons discussed above, I, upon a *de novo* review of the record, accept Judge Strand's well-crafted and well-reasoned Report and Recommendation and grant defendant Mosley's motion to suppress.  Accordingly, all evidence discovered as a result of the warrantless search of Mosley's duffel bag, including all evidence obtained from the warranted searches of Mosley's house and bank accounts, is suppressed.

**IT IS SO ORDERED**.
**DATED** this 27th day of October, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA